## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-20815-CIV-ALTONAGA/Torres

**ALCIDES LANDIVAR**,

     Plaintiff,
v.

**CELEBRITY CRUISES, INC.**,

     Defendant.

_____/

### ORDER

**THIS CAUSE** came before the Court on Defendant, Celebrity Cruises, Inc.'s Motion to Strike Plaintiff's Expert, Dr. John Bradberry [ECF No. 33], filed on December 29, 2021. Plaintiff, Alcides Landivar, filed a Response [ECF No. 34], and Defendant filed a Reply [ECF No. 42]. The Court has considered the parties' written submissions, the record, and applicable law.

### BACKGROUND

Plaintiff embarked on a month-long voyage with the Defendant cruise line on March 1, 2020. (*See* Resp. 1). On March 31, 2020, one day after disembarking from the ship, Plaintiff tested positive for COVID-19. (*See id.*). Soon after, he developed blood clots in his femoral artery and underwent life-saving surgery to amputate his right leg above the knee. (*See id.* 1–2). He then sued. The parties dispute whether Plaintiff can prove that he contracted COVID-19 while aboard Defendant's ship.

Early in the case, the Court entered a Scheduling Order that set several deadlines relevant here. (*See* Scheduling Order [ECF No. 14]). Those deadlines included: November 1, 2021 for exchanging expert reports; November 15, 2021 for exchanging expert rebuttal reports; November 29, 2021 for the close of all discovery; and December 14, 2021 for filing all pre-trial motions. (*See*

*id.* 1–2). The Scheduling Order permitted the parties or Magistrate Judge Torres to extend the deadline for completing discovery. (*See id.* 1 n.1). The parties eventually agreed to extend the discovery deadline into December 2021. Defendant also sought and obtained a two-week extension of the deadline to file pre-trial motions. (*See* Def.'s Unopposed Mot. for a Two Week Extension of the Pre-Trial and *Daubert* Mot. Filing Deadline [ECF No. 28] 3; December 8, 2021 Order [ECF No. 30] 4).

The parties exchanged initial expert reports as planned on November 1, 2021. (*See* Resp. 2). Plaintiff retained Dr. John Bradberry, a physician who specializes "in cruise ship medicine[,]" as his medical and liability expert. (Mot., Ex. B, Bradberry Med. Report [ECF No. 33-2] 1 (alteration added)). In his report, Dr. Bradberry opined: "Based on the known 2 to 14 day incubation period of Covid-19, coupled with his presenting signs and symptoms of illness before he disembarked the vessel and as early as March 23, 2020, Mr. Landivar more likely than not contracted Covid-19 while on board the Celebrity Eclipse." (*Id.* 3).

Dr. Bradberry did not submit a rebuttal report. (*See* Reply 4). Six days before the discovery deadline set by the Scheduling Order, Defendant requested to depose Dr. Bradberry. (*See* Resp. 2). In its request, Defendant indicated that November 30, 2021 — the day after the initially set discovery deadline — was its first date of availability. (*See id.*). The parties ultimately agreed to schedule the deposition for 3:00 p.m. on December 7, 2021. (*See id.* 3). On November 30, 2021, Defendant noticed the deposition and served Dr. Bradberry with a subpoena *duces tecum*. (*See id.*).

Plaintiff's counsel provided Defendant with documents responsive to the subpoena *duces tecum* at 8:36 a.m. on December 7, or roughly six and a half hours before Dr. Bradberry's deposition. (*See* Resp. Ex. 1 [ECF No. 34-1] 1). Included in the production was a 10-page article

that addressed the characteristics of COVID-19 patients according to their incubation periods. (*See* Mot., Ex. A, Bradberry Dep. Tr. [ECF No. 33-1] 292–301).[1] The article suggested, among other things, that more severe symptoms were associated with a shorter incubation period. (*See id.* 299). Plaintiff had not produced or shared the article before.

During his deposition, Dr. Bradberry responded to questioning about Plaintiff's likely incubation period:

> Q    So let's break that down fact by fact. What date did he first present with symptoms you believe are COVID consistent?
>
> A    March 23, as I recall.
>
> Q    And what incubation period do you assign him?
>
> A    So the standard is five to six days and so let's be liberal about this and let's say it's six days instead of five, so let's back that up six days, that's the 17 of March. That's well into the period where he was stuck onboard ship with no option to get off.
>
> Q    And he was stuck onboard the ship from March 14th to March 30; is that correct?
>
> A    Yes.
>
> Q    Is there any particular reason that you assign Mr. Landivar this six-day incubation period?
>
> A    Yes. It's the standard for incubation of the COVID virus. . . .
>
> Q    Thank you for that. My question is is there anything particular to Mr. Landivar's case that you believe especially warrants that six-day incubation period?
>
> A    . . . [I]t could very well be even a little bit of a shorter incubation period. Because his case certainly qualifies as being very severe. . . .
>
> Medical literature supports the position that in the more severe cases that the incubation period is actually shorter. So I have reason to believe that it could be more like three or four days and that really pulls him away from those

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings. Citations to deposition testimony rely on the pagination and line numbering in the original document.

> opportunities for going on shore. And that's not just my opinion, this is what's supported in the medical literature.

(Bradberry Dep. Tr. 187:24–190:1 (alterations added)).

Dr. Bradberry later clarified that the article he produced in response to the subpoena *duces tecum* was part of the "literature" that he had based his opinion on. (*Id.* 190:18–192:11). And his testimony about the average incubation period being roughly six days was consistent with testimony from Defendant's experts on the same topic. (*See* Statement of Material Facts, Ex. 15, Merlo Report [ECF No. 32-15] 10 ("Studies suggest a mean incubation time of 5.8 days ranging from 1.92 to 13.6 days."); *id.*, Ex. 17, Haber Report [ECF No. 32-17] 5 ("Based on the best available literature . . . , the median incubation period of COVID-19 . . . is 5 to 6 days but can range up to 14 days." (alterations added))).

Defendant never sought to depose Dr. Bradberry a second time or to require additional disclosure after receiving his report. (*See* Resp. 5). It now moves to strike Dr. Bradberry's testimony to the extent it deviates from the opinion given in his report. (*See* Reply 5).

**LEGAL STANDARD**

Federal Rule of Civil Procedure 26(a)(2)(B) requires initial expert reports to contain "a complete statement of all opinions the witness will express and the basis and reasons for them" as well as "the facts and data considered by the witness in forming them[.]" Fed. R. Civ. P. 26(a)(2)(B) (alteration added). An expert report meets that requirement "when it is sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced." *Democratic Republic of Congo v. Air Cap. Grp., LLC*, No. 12-20607-Civ, 2013 WL 2285542, at *3 (S.D. Fla. May 23, 2013) (citation and quotation marks omitted). To that end, Rule 26 "does not limit an expert's testimony simply to reading his report" and indeed "contemplates that the expert will supplement, elaborate upon, and explain his

4

report in his oral testimony." *Searcy v. United States*, No. 19-80380, 2020 WL 4187392, at *3 (S.D. Fla. July 21, 2020) (citation and quotation marks omitted).

Violations of Rule 26(a)(2)(B)'s disclosure obligations require exclusion of the undisclosed information or witness unless the violation was justified or harmless. *See* Fed. R. Civ. P. 37(c)(1). "[T]he exclusion of expert testimony is a severe sanction that is not appropriate where a party's actions do not result in prejudice to the opposing party." *Zaki Kulaibee Establishment v. McFlicker*, No. 08-60296-Civ, 2011 WL 1327145, at *4 (S.D. Fla. Apr. 5, 2011) (alteration added; citations omitted); *see also Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 889 (11th Cir. 2006) ("A harmless violation of Rule 26 does not mandate exclusion of the evidence." (citing Fed. R. Civ. P. 37(c)(1))). A failure to disclose material under Rule 26 is harmless if it causes no surprise or prejudice, if any surprise that is caused can be cured, or if the undisclosed material is not important. *See Searcy*, 2020 WL 4187392, at *3 (citation omitted).

## DISCUSSION

Defendant asks the Court to exclude Dr. Bradberry's opinion that Plaintiff's incubation period was likely six days. (*See* Reply 4). It makes two arguments to support that request. First, Defendant asserts that Dr. Bradberry's report was not sufficiently complete because it did not detail his opinion that Plaintiff's incubation period was six or fewer days and did not mention the article supporting that opinion. (*See* Mot. 2). Second, Defendant argues that Dr. Bradberry's failure to disclose the opinion and article caused it prejudice. (*See* Reply 4).

These arguments do not withstand scrutiny. To begin, Dr. Bradberry's initial report sufficed as "complete" under Rule 26(a)(2)(B)(i). His opinion that Plaintiff's incubation period was likely six or fewer days could hardly have surprised Defendant, given that a six-day incubation period falls comfortably in the middle of the 2–14 day range outlined in the report. *See Muldrow*

5

*ex rel. Est. of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167–68 (D.C. Cir. 2007). In his deposition, Dr. Bradberry was not limited "to reading his report." *Searcy*, 2020 WL 4187392, at *3. His testimony that Plaintiff's incubation period likely fell in the middle of the probable range was simply a permissible elaboration of his report's conclusion that Plaintiff contracted COVID-19 while aboard Defendant's ship. *See id.*; *see also Ward v. Carnival Corp.*, No. 17-24628-Civ, 2019 WL 1228063, at *3 (S.D. Fla. Mar. 14, 2019) (citations omitted).

Further, Defendant cannot credibly claim that Dr. Bradberry's report deprived it of a fair opportunity to depose him. For one thing, *each of Defendant's own experts* corroborated the prevailing medical view that the average COVID-19 incubation period is about six days. (*See* Merlo Report 10; Haber Report 5). For another, Plaintiff provided Defendant with a copy of the article that he based his opinion on in response to Defendant's subpoena *duces tecum* well in advance of the Dr. Bradberry's deposition. (*See* Bradberry Dep. Tr. 190:18–192:11). Nothing in Rule 26 precludes "additional literature review" after filing an initial report. *In re Accutane Prods. Liab. Litig.*, No. 8:04-md-2523-T-30TBM, 2007 WL 201091, at *1 (M.D. Fla. Jan. 24, 2007). Also, Defendant fails to explain why six hours was not enough time to review the eight-page article (excluding endnotes) *it solicited for production* just days earlier. (*See* Bradberry Dep. Tr. 292–301). If Defendant genuinely feels that it was unprepared to depose Dr. Bradberry, it has only itself to blame.

Defendant's assertions of prejudice likewise fall flat. Defendant first protests that Plaintiff produced the article "outside the Discovery deadline." (Mot. 2; *see* Reply 5). Yet Defendant does not contest (or even mention) that it noticed Dr. Bradberry's deposition and served him with a subpoena *duces tecum* after the deadline had passed. (*See* Resp. 3). The Scheduling Order permitted the parties to extend the discovery deadline by agreement. (*See* Scheduling Order 1 n.1).

As importantly, Defendant does not describe any efforts it made to remedy perceived defects in Dr. Bradberry's report — whether by conferring with Plaintiff's counsel, requesting an extension of the expert disclosure deadlines, requesting to further depose Dr. Bradberry, or seeking a hearing before the Magistrate Judge. The better course when making expert disclosures, to be sure, is to provide as much detail as possible, thereby ensuring compliance "with both the spirit and the letter of the rule." *Griffith v. General Motors Corp.*, 303 F.3d 1276, 1283 (11th Cir. 2002). But if an issue about a party's disclosure obligations arises, the parties must work to resolve it before seeking the "severe sanction" of excluding an expert's testimony. *Zaki Kulaibee Establishment*, 2011 WL 1327145, at *4; *see also Kondragunta v. Ace Doran Hauling & Rigging Co.*, No. 1:11-cv-01094-JEC, 2013 WL 1189493, at *8 (N.D. Ga. Mar. 21, 2013) (noting that the Rule 37(c)(1) inquiry focuses on whether a "non-compliant disclosure created a harm that cannot be cured"); *SEC v. Huff*, No. 08-60315-Civ, 2010 WL 228000, at *3 (S.D. Fla. Jan. 13, 2010) (concluding that excluding expert testimony for a failure to disclose before non-disclosing party files motion to compel would "permit[] a party to play discovery 'gotcha'" (alteration added)).

Simply, Defendant did not do that here. It could have attempted to cure any purported surprise by advising Plaintiff of its position, seeking to depose Dr. Bradberry again, and, failing that course, seeking judicial relief. *See Kondragunta*, 2013 WL 1189493, at *8. "Defendant[] did not do so, but instead la[y] in wait, hoping that [P]laintiff's non-compliance would doom his ability to offer any expert testimony." *Id.* (alterations added). The Court will not impose the draconian sanction of excluding testimony from Plaintiff's only expert when Defendant made no attempt to resolve the issue by more measured means. *See Griffith*, 303 F.3d at 1283 (holding that district court did not abuse discretion in declining to strike defendant's expert testimony when plaintiff "allowed the impasse to continue well beyond the point of good faith efforts to resolve the issue

7

without court intervention"); *Woienski v. United Airlines, Inc.*, 383 F. Supp. 3d 1342, 1347 (M.D. Fla. 2019) (denying motion to strike expert testimony because defendant did not "attempt to cure the deficiencies" of plaintiff's expert report and plaintiff was "unlikely to carry his burden" without the testimony).

Defendant also argues that Dr. Bradberry's testimony prejudiced its ability to rebut Dr. Bradberry's testimony in its motion for summary judgment. (*See* Reply 5). Hardly. Defendant *chose* to depose Dr. Bradberry after the discovery deadline had expired. (*See* Resp. 3). Nonetheless, the Court granted Defendant's request to extend the deadline to file pre-trial motions, giving Defendant three weeks after the deposition to file its motion for summary judgment. (December 8, 2021 Order [ECF No. 30] 4). If the Local Rules permit 14 days to *respond* to a motion, *see* S.D. Fla. L.R. 7.1(c), having seven *additional* days to file a motion is more than fair. Relatedly, if Defendant truly believed that Dr. Bradberry's testimony caused it prejudice, it had three weeks after the deposition to request a further extension of the pre-trial motions deadline. But Defendant never sought such relief.

In sum, Dr. Bradberry's initial expert report was complete for Rule 26 purposes, and even if it were not, its incompleteness caused Defendant no harm. Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant, Celebrity Cruises, Inc.'s Motion to Strike Plaintiff's Expert, Dr. John Bradberry **[ECF No. 33]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 27th day of January, 2022.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record